IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03040-CBS

KYLE V. LAUREN,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

---

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

Magistrate Judge Craig B. Shaffer

      This matter comes before the court following a one-day bench trial.  The parties

consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ.

P. 73, and D.C.COLO.LCivR 72.2 (doc. #13), and the matter was referred to this court on

December 1, 2014 to "conduct any and all further proceedings in the case, including the trial and

. . . entry of a final judgment."   In compliance with Fed. R. Civ. P. 52(a) and (c), the court enters

the following findings of fact and conclusions of law.

### PROCEDURAL HISTORY

      Kyle V. Lauren commenced this action on October 24, 2014 with a Complaint filed in the

District Court for Adams County, Colorado.  Plaintiff asserted a single claim for negligence

against Jerry D. Lewis, a Manager of Transportation in the United States Postal Service's Denver

office, following an accident in which the vehicle in which Mr. Lauren was riding was struck

when Mr. Lewis allegedly made an illegal u-turn into oncoming traffic.  Plaintiff claimed that

"[a]s a direct and proximate result of the subject accident, [he] suffered serious injuries, damages, and losses including, but not limited to, an annular tear at C4-5 with some disc extrusion narrowing the spinal canal; right-sided cervical facet syndrome; and right shoulder impingement/supraspinatus tendinosis/bursitis which required . . . treatment for a right-sided facetogenic pain generator." *See* Complaint (doc. #3), at ¶9.  Mr. Lauren further alleged that his injuries "have caused him physical, mental and emotional pain and suffering, and emotional distress, disfigurement, loss of quality of life, and loss of enjoyment of life, all of which are permanent in nature," as well as loss of earnings and earnings capacity.  *Id.* at ¶¶11 and 12.

The United States, on November 10, 2014, filed a Notice of Removal (doc. #1), acknowledging that "[a]t the time of the actions that are the subject of the complaint, Mr. Lewis was a federal employee of the United States Postal Service and was acting in the scope of his federal employment."  On November 13, 2014, the United States moved (doc. #10) to substitute itself as the sole defendant in this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2679(b)(1), which provides that a suit against the United States shall be the exclusive remedy for damages allegedly resulting from negligent actions of federal employees taken within the scope of their employment.  The United States was substituted as the sole defendant in this action on November 14, 2014.  *See* doc. #11.

The Federal Tort Claims Act expressly imposes an administrative exhaustion requirement that bars a claimant from bringing suit in federal court "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  *See* 28 U.S.C. §

2675(a).[1]   *See Barnes v. United States*, 776 F.3d 1134, 1142 (10th Cir. 2015) ("In a nutshell, §

2675(a) articulates an administrative-exhaustion requirement that dictates when a potential

plaintiff's opportunity to initiate a claim begins[.]").   The purpose of this notice provision "is to

allow the agency to expedite the claims procedure and avoid unnecessary litigation by providing

a relatively informal nonjudicial resolution of the claim."   *Estate of Trentadue ex rel. Aguilar v.*

*United States*, 397 F.3d 840, 853 (10th Cir. 2005) (quoting *Mellor v. United States*, 484 F. Supp.

641, 642 (D. Utah 1978).   The FTCA also includes a statute of limitation which states that "[a]

tort claim against the United States shall be forever barred unless it is presented in writing to the

appropriate Federal agency within two years after such claim accrues or unless [the] action is

begun within six months after the date of mailing, by certified or registered mail, of notice of

final denial of the claim by the agency to which it was presented."   *See* 28 U.S.C. § 2401(b).

On December 24, 2014, the United States moved to dismiss this action for lack of subject

matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).   That motion (doc. #19), along with a

supporting affidavit prepared by an employee with the United States Postal Service National

Tort Center, argued that the court lacked subject matter jurisdiction over Mr. Lauren's lawsuit

based upon his failure to submit the required administrative claim within two years of the subject

accident.   Indeed, the Postal Service insisted that it had no record of ever receiving an

administrative claim from Mr. Lauren or any individual acting on his behalf prior to November

---

[1]That same section states that "[t]he failure of an agency to make final disposition of a claim within six months after it was filed shall, at the option of the claimant at any time thereafter, be deemed a final denial of the claim for purposes of this section."  This "deemed denied" provision, however, presumes the proper filing of a written administrative claim.  *Cf. Boomer v. Deboo*, No. 2:11-CV-07, 2012 WL 112328, at *2 (N.D.W.Va. Jan. 12, 2012) ("presentment requires that the appropriate agency *receive* the claim before it can be deemed denied under § 2675(a) of the FTCA") (emphasis in original).

3

12, 2014.  The government reasoned that compliance with the two-year limitation period "is one of the conditions of the government's waiver of sovereign immunity under the FTCA, and [a federal] court lacks subject matter jurisdiction to proceed under the FTCA if a plaintiff fails to satisfy the FTCA's timing requirements set forth in § 2401(b)."  According to the United States, Plaintiff's failure to comply with § 2401(b) could not be cured and therefore stood as a total bar to recovery under the FTCA.

Mr. Lauren's counsel insisted, to the contrary, that on April 25, 2014, his staff sent by certified mail an executed Standard Form (SF) 95 to the Postal Service.  Counsel further proffered that one of his employees received, but subsequently misplaced, a signed return receipt ("green card") from the Postal Service confirming receipt of Mr. Lauren's claim.  Based upon affidavits attached to his Response (doc. #20), Mr. Lauren argued that he timely complied with the notice provision in § 2401(b) and, thus, the court had jurisdiction over the subject matter of this case.  In the alternative, Mr. Lauren sought leave to conduct limited discovery on the issue of whether his administrative claim "was in fact received (and subsequently misplaced) by the USPS."

On April 28, 2015, this court directed the parties to file supplemental briefs addressing the United States Supreme Court's April 22, 2015 decision in *United States v. Wong*, __ U.S. __, 135 S.Ct. 1625 (2015) and its effect, if any, on the instant case.  In *Wong*, the Supreme Court held that the time limitations in § 2401(b) were non-jurisdictional and subject to equitable tolling.  *Id.* at 1638.  That ruling necessarily called into question Tenth Circuit precedent "relating to the jurisdictional status *vel non* of § 2401(b)'s time limitations."  *See Barnes*, 776 F.3d at 1148 (holding that "the district court properly dismissed [plaintiffs'] FTCA lawsuit on

jurisdictional grounds after correctly determining that the action was time-barred").

Plaintiff subsequently filed a Supplemental Response to United States' Motion to

Dismiss (doc. #40), in which Mr. Lauren advanced alternative arguments in opposition to the

pending motion.  First, Mr. Lauren argued that his counsel had complied with §§ 2675(a) and

2401(b) by providing other forms of notification within the required two-year period.  If that

argument was unsuccessful, Plaintiff suggested the factual record demonstrates that "the two

year statue of limitations must be equitably tolled."  Plaintiff's Supplemental Response was

accompanied by 31 separate exhibits.

The United States also filed Supplemental Briefing in Support of its Motion to Dismiss

(doc. #41).  In that submission, the government conceded that while *Wong* held that the FTCA's

time limits are non-jurisdictional and subject to equitable tolling, the Supreme Court had not

"alter[ed] the absolute two-year time bar for presenting a claim to a federal agency set forth in §

2401(b)."  The United States reasoned that

> Although, following *Wong*, a motion to dismiss for lack of subject-matter
> jurisdiction is no longer the appropriate procedural vehicle for resolving the
> factual question of whether the Plaintiff timely presented his tort claim against the
> United States, it *can* be resolved pursuant to the Court's authority to conduct a
> trial on the facts presented and to issue findings and conclusions under Fed. R.
> Civ. P. 42(b).

*Id.* The government therefore asked this court to set the matter for an evidentiary hearing on the

limited issue of whether Mr. Lauren complied with the time limitations imposed under the

FTCA.

During a motion hearing on May 12, 2015, this court conferred with counsel for the

parties on the status of the pending motion to dismiss.  Counsel conceded, in the wake of the

*Wong* decision, that the disputed issues were no longer appropriate for disposition under Rule

12(b)(1).  Counsel also agreed that the objectives underlying Fed. R. Civ. P. 1 ("the just, speedy, and inexpensive determination of every action") would be more readily achieved through a bifurcated bench trial under Rules 42 and 52 that focused on issues involving the applicable statute of limitations and equitable tolling.  That bench trial was conducted on June 17, 2015, following the submission of trial briefs by both sides.

In advance of trial, the United States filed a Motion in Limine (doc. #50) seeking to exclude "any hearsay offered in support of the allegation that Plaintiff timely presented his claim via certified mail sent on or around April 25, 2014, including but not limited to the affidavit of Vanessa Salvador dated December 18, 2014."  Mr. Lauren had proffered Ms. Salvador's affidavit  in response to the United States' Motion to Dismiss.  *See* Affidavit of Vanessa Salvador attached as Exhibit 5 (doc. #205) to Plaintiff's Response to United States's Motion to Dismiss.  In her affidavit, Ms. Salvador, a receptionist in the law office of Alan C. Shafner, Esq., stated that she sent Mr. Lauren's SF 95 by certified mail to the Postal Service on April 25, 2014 and received back a signed green card that subsequently was misplaced or lost.  Counsel for the United States argued that Ms. Salvatore's out-of-court statement did not fall properly under any recognized hearsay exception and thus was inadmissible.  Plaintiff's counsel argued in his Response to United States' Motion in Limine (doc. #56) that Ms. Salvatore's affidavit was admissible under Fed. R. Evid. 803(3) ("then-existing mental, emotional, or physical condition") or Fed. R. Evid. 807(a) (the "residual exception").

On June 17, 2015, counsel for Plaintiff Lauren conceded that Ms. Salvador would not be testifying at trial and that her current residence was unknown.  Plaintiff's counsel acknowledged that he had recently spoken by telephone to Ms. Salvador, but that she had not cooperated with

his efforts to arrange either an interview or deposition.  It is also undisputed that Ms. Salvador no longer works at Mr. Shafner's law firm.

After hearing the arguments of counsel, the court granted in part and denied in part the United States' Motion in Limine.  More specifically, I held that Ms. Salvador's affidavit was obviously an out-of-court statement purporting to prove the truth of the matters asserted, *i.e.,* that on April 25, 2014, Ms. Salvador actually sent by certified mail an executed SF 95 addressed to the Postal Service and that she subsequently received but then lost the Postal Services' signed return receipt.  The court found that the salient portions of Ms. Salvador's affidavit consisted of nothing more than conclusory statements that were not, and could not, be corroborated by any other witnesses or exhibits.  Accordingly, I granted the government's motion to the extent it sought to exclude from trial the Salvador affidavit, as well as any hearsay statements made by Ms. Salvador after April 24, 2014, finding that such evidence would not have sufficient "circumstantial guarantees of trustworthiness" to support admission under Rule 807.  I further found that such evidence must be excluded under Rule 803(3) as a "statement of memory or belief" offered "to prove the fact remembered or believed."  I denied the government's motion to the extent that it sought to exclude any statements that Ms. Salvador made on April 24, 2014 reflecting her intent to comply with the mailing instructions she received from Ms. Williams. Those limited statements, I found, were admissible under Rule 803(3) as evidence of Ms. Salvador's "then existing state of mind."

## ANALYSIS

Rule 52(a) provides that "[i]n an action tried on the facts without a jury," the court must "find the facts specifically and state its conclusions of law separately." *See* Fed. R. Civ. P. 52(a)(1). The court's factual findings, "whether based on oral or other evidence, must not be set aside unless clearly erroneous." Fed. R. Civ. P. 52(a)(6).

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. . . . A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Fed. R. Civ. P. 52(c).

As the corresponding Advisory Committee Note makes clear, a judgment on partial findings under Rule 52(c) differs from a motion for summary judgment. A judgment on partial findings "is made after the court has heard all the evidence bearing on the crucial issue of fact," while a summary judgment "is made on the basis of facts established on account of the absence of contrary evidence or presumptions." *See* Fed. R. Civ. P. 52(c), advisory committee note on 1991 amendment. "Under Rule 52(c), the trial court may weigh the evidence, resolve disputed issues of fact, 'and decide for itself in which party's favor the preponderance of the evidence lies.'" *State of Oklahoma v. Tyson Foods, Inc.,* No. 05-CV-0329-GKF-PJC, 2010 WL 653032, at *2 (N.D. Okla. Feb. 17, 2010) (in exercising its authority under Rule 52(c), "the court is not required to consider the evidence in the light most favorable to the plaintiff, but may weigh the evidence to determine whether or not the plaintiff has demonstrated a factual and legal right to relief."). *See also Richie v. United States,* 451 F.3d 1019, 1023 (9th Cir. 2006) ("In deciding whether to enter judgment on partial findings under Rule 52(c), the district court is not required

to drawn any inferences in favor of the non-moving party; rather, the district court may make findings in accordance with its own view of the evidence."); *Equipment Fin., LLC v. Hutchison*, No. 09-cv-0164, 2011 WL 4482345, at *11 (E.D. Pa. Sept. 27, 2011) ("[T]o grant judgment under Rule 52(c), the district court applies the same standard of proof and weighs the evidence as it would at the conclusion of trial.").

As I noted at the outset of the bench trial on June 17, 2015, the discrete issues to be decided by the court are: (1) whether Mr. Lauren or individuals acting on his behalf presented to the Postal Service a proper claim under 28 U.S.C. § 2675(a) and 39 C.F.R. § 912.5; (2) if so, was that claim submitted within the two-year limitation period imposed under 28 U.S.C. § 2401(b); and (3) if Mr. Lauren did not submit a proper claim on a timely basis, do the facts in this case support an application of the doctrines of equitable tolling or equitable estoppel. At the conclusion of the bench trial, I took this matter under advisement.

A.      *Findings of Fact*

After carefully considering the testimony and credibility of the parties' witnesses, as well as the exhibits admitted at trial, the court makes the following findings of fact.

On May 24, 2012, Mr. Lauren was riding as a passenger in a motor vehicle driven by Vance Williamson. That vehicle was struck by a vehicle owned by the United States Postal Service and driven by Jerry Lewis, a Postal Service employee. Mr. Lewis subsequently was cited for careless driving. *See* Trial Exhibit 3.

On or about July 6, 2012, Mr. Lauren retained Mr. Shafner to represent him in connection with the May 24, 2012 automobile accident. Internal documentation prepared contemporaneously by Mr. Shafner's law firm noted the date of the incident (May 24, 2012), that

the case involved "FED TORTS," and that a "CLAIM MUST BE FILED WITHIN TWO YEARS WITH FEDERAL AGENCY OR SUIT MUST BE FILED WITHIN 6 MONTHS AFTER DENIAL OF CLAIM."[2]  *See* Trial Exhibit 32.

On July 9, 2012, Plaintiff's counsel sent by certified mail a letter to Mr. Lewis's personal address asking that "a representative of the automobile insurance company providing coverage for the subject [Postal Service] vehicle contact us immediately" and threatening "further legal action" if counsel did not hear from Mr. Lewis or the insurance company.[3]  *See* Trial Exhibit 2 The letter sent to Mr. Lewis did not quantify the damages attributable to Mr. Lauren's injuries or refer to a specific damage amount.  At trial, Mr. Shafner conceded that he did not consider this correspondence to be a "demand letter" under the FTCA.  It is undisputed that after July 9, 2012, Mr. Shafner had no other contact with, nor did he send any additional correspondence to, Mr. Lewis.

Mr. Lewis testified that he brought Mr. Shafner's letter to Hal vonHedemann, an operations program specialist with the Postal Service, who Mr. Lewis considered to be the Postal Service's "insurance representative."  Mr. Lewis also presumed that at some point Mr. vonHedemann received the Standard Form 91 Motor Vehicle Accident Report, *see* Trial Exhibit 5, and the PS Form 1769/301 Accident Report, *see* Trial Exhibit 6, that Mr. Lewis prepared to document the May 24, 2012 accident.

---

[2]At trial, Mr. Shafner acknowledged that from the outset of the engagement, he was aware that Mr. Lauren's claim implicated the two-year statute of limitations under the Federal Tort Claims Act.  *See also* Trial Exhibit 44.

[3]The Shafner law firm retained in its files the return receipt signed and returned by Mr. Lewis.

On or about August 21, 2012, Mr. Shafner spoke by telephone with Mr. vonHedemann, who Mr. Shafner understood would be handling or adjusting claims arising from the May 24, 2012 accident.   Mr. Shafner recalled that during this conversation, Mr. vonHedemann asked about Mr. Lauren's injuries, his lost wages, and his medical bills.   Mr. Shafner explained that his client was still receiving treatment and, therefore, Mr. Lauren's putative claim could not be quantified with certainty.   Later that same day, Mr. vonHedemann sent Mr. Shafner an email with an attached "Standard Form 95 for claim to property/injury" with printed instructions for completing that Form.[4]   In the same email, vonHedemann specifically warned that "all highlighted areas" should be filled in on the SF 95 and that "[b]oxes 6, 12b, 12d , 13a and 14 <u>must</u> be completed."[5]   *See* Trial Exhibit 19 (emphasis in original).   After receiving Mr. vonHedemann's email and attachment, Mr. Shafner responded with his own email, stating that he "will find out the answers to your questions and respond shortly."   Mr. Shafner testified that the conversation and exchange of emails on August 21, 2012, were his first and only contacts with Mr. vonHedemann.

Ms. Wallace, the paralegal in Mr. Shafner's office assigned to Mr. Lauren's case,

---

[4]The printed instructions on page 2 of the SF 95 sent to Mr. Shafner on August 2,1 2012 specifically warned that "A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A <u>SUM CERTAIN</u> FOR INJURY TO OR LOSS OF PROPERTY , PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT.   THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITH <u>TWO YEARS</u> AFTER THE CLAIM ACCRUES."   *See* Trial Exhibit 19 (emphasis in original).

[5]Box 12(b) on the SF 95 requires the claimant to specify the amount (in dollars) of their personal injury claim and Box 12(d) requires the claimant list the "total" amount of their claim.

testified that she was aware that the FTCA required Mr. Lauren to submit a written administrative claim to the Postal Service as a precondition to filing a lawsuit. *See* Trial Exhibit 31. In fact, in January 2014, Ms. Wallace sent Mr. Lauren an email indicating that the law firm would "hold[ ] off on submitting [the claim form] until we know the rating and the full extent of your damages." However, in that same email, Ms. Wallace asked the client to review a draft SF 95 to "confirm that everything on here looks correct so that all we need to do is plug in the number for the value of the personal injury demand we are making." *See* Trial Exhibit 34. Ms. Wallace sent another email to Mr. Lauren on April 14, 2014, asking for "final paperwork so that we can go ahead and submit your personal injury claim." *See* Trial Exhibit 35. A completed SF 95 was signed by Mr. Lauren on April 22, 2014, claiming $105,000 for personal injuries. *See* Trial Exhibit 39.

Ms. Wallace testified that on April 24, 2014, she sent Ms. Salvador an email asking her to send Mr. Lauren's completed SF 95 by certified mail to the following address:

> Tort Claims Representative
> USPS GMF Admin Building
> 7500 E. 53rd Place Room 1138
> Denver, CO 80266-9334

*See* Trial Exhibit 40. According to Ms. Wallace, Ms. Salvador indicated that she would mail the completed form the next day. Mr. Shafner testified that he also overheard this comment by Ms. Salvador. However, Ms. Wallace and Mr. Shafner acknowledged that they never actually saw Ms. Salvador complete the white certified mailing form and neither have any personal knowledge as to whether that claim form was actually mailed by Ms. Salvador on or after April

25, 2014.[6]  Mr. Shafner did not know whether as a routine matter Ms. Salvador would have

prepared a cover letter to accompany the SF 95, or whether his staff subsequently searched for

such a cover letter.

Ms. Wallace testified that pursuant to the law firm's standard practice, Ms. Salvador

would have stapled the return receipt to a copy of the document that was sent by certified mail.

Ms. Wallace admitted that she never saw any documentation confirming that Ms. Salvador

actually sent the claim form by certified mail.  According to Ms. Wallace, the law firm was not

able to find a certified mailing receipt or a mailing number corresponding to Mr. Lauren's claim

form, and has no record to indicate that it incurred any related mailing charges.  The law firm has

never found a return receipt confirming that Mr. Lauren's SF 95 was actually mailed to and

received by the Postal Service.

Mr. vonHedemann testified in the government's case-in-chief and insisted that he did not

receive Mr. Lauren's SF 95 prior to November 12, 2014, and certainly not before May 24, 2014.

Mr. vonHedemann acknowledged receiving Mr. Shafner's July 9, 2013 letter to Mr. Lewis, but

explained that he did not consider that letter to be a written claim that would satisfy the pertinent

statutes and regulations.  Mr. vonHedemann conceded that Mr. Shafner's letter and the accident

reports submitted by Mr. Lewis provided much of the information otherwise required on a SF 95,

but those documents did not include a sum certain, or even an estimated amount, for Mr.

Lauren's personal injuries.  Mr. vonHedemann acknowledged that Postal Service policies

---

[6]Ms. Wallace acknowledged at trial that Ms. Salvador had only joined the law firm in
early 2014.  Ms. Wallace also conceded that Ms. Salvador likely had only sent certified mail for
the firm on 2 or 3 occasions prior to April 24, 2014, and that Ms. Salvador occasionally would
fall behind in completing assignments.

contemplate that tort claims will be processed on a timely basis.  Plaintiff's counsel certainly pointed out deficiencies in Mr. vonHedemann's claims processing procedures and called into question Mr. vonHedemann's credibility.  However, Mr. Lauren did not present any evidence that persuasively contradicted Mr. vonHedemann's assertion that he never received a SF 95 from Mr. Lauren or Mr. Shafner's office prior to November 12, 2014.[7]  More to the point, Mr. vonHedemann's testimony on the essential issue of presentment stood unrebutted in the absence of any admissible evidence to prove that Ms. Salvador actually mailed Mr. Lauren's claim form on or after April 25, 2014.

Ms. Wallace was under the impression that as of May 14, 2014, the law firm had not received a response to the SF 95 that she believed had been mailed on April 25, 2014, as reflected in an email that she sent to Mr. Lauren on that day.  Mr. Shafner was copied on that same email to the client and, therefore, presumably understood that the two-year window for submitting an administrative claim pursuant to 28 U.S.C. § 2401(b) would close in ten days.[8] *See* Trial Exhibit 36.  Mr. Shafner acknowledged, however, that he took no action based on Ms.

---

[7]It should be noted that Vance Williamson, the driver of the car in which Mr. Lauren was riding on May 24, 2012, filed a signed, completed SF 95 on or about September 10, 2012, claiming $18,227.77 in property damage.  *See* Trial Exhibit 20.  That claim was processed by Mr. vonHedemann and the Postal Service issued a check for $16,619.00 on November 8, 2012. *See* Trial Exhibit 21.

[8]On its face, § 2401(b) does not require that the federal agency receive the required notification by mail; rather the statute simply requires that the claim be "presented in writing." In contrast, the statute specifically states that the notice of final denial should be sent "by certified or registered mail."  As of May 14, 204, Mr. Shafner and his staff still had 10 days to hand deliver Mr. Lauren's SF 95 to the Postal Service's Administrative Building at 7500 E. 53rd Place, Denver, Colorado, which was located approximately 18.3 miles from Mr. Shafner's law office in Greenwood Village, Colorado.  *See* www.mapquest.com.  *Cf. Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1219 n.1 (10th Cir. 2007) (taking judicial notice of a distance between two geographical points based on a website).

Wallace's May 14, 2014 email.  On September 5, 2014, Ms. Wallace acknowledged that she

would be "reaching out to [the Postal Service] to confirm that they received the claim form and

what their response is."  *See* Trial Exhibit 37.  Ms. Wallace sent an email inquiry to Ms.

Salvador on September 10, 2014, asking "[d]o you have the green card" verifying that the Postal

Service had received Mr. Lauren's SF 95.  *See* Trial Exhibit 40.

Mr. Shafner filed Mr. Lauren's FTCA action in the District Court for Adams County on

October 24, 2014.  On November 12, 2014, Assistant United States Attorney Katherine Ross

contacted Mr. Shafner asking whether his client had ever sent a completed SF 95 to the Postal

Service.  When Mr. Shafner said yes, Ms. Ross asked if a copy of that document could be sent to

her.  That same day, Mr. Shafner instructed Ms. Wallace to email Mr. Lauren's completed SF 95

to defense counsel.  *See* Trial Exhibit 25.  The United States claims, without refutation, that this

was the first time Mr. Lauren's representatives provided the Postal Service with the notice

required by §§ 2675(a) and 2401(b).

B.    *Conclusions of Law*

Although the FTCA exposes the United States to liability for the negligence of its

employees "in the same manner and to the same extent as a private individual under like

circumstances," that waiver of sovereign immunity is subject to well-defined administrative

and/or procedural constraints.  Accordingly, "an aggrieved party 'must file an FTCA action in

careful compliance with its terms.'"  *Souder v. U.S. Navy*, No. PWG-13-2809, 2014 WL

4749557, at *3 (D. Md. Sept. 22, 2014) (quoting *Kokotis v. U.S. Postal Serv.*, 223 F.3d 275, 278

(4th Cir. 2000)).  *See also Carroll v. United States*, No. 3:14-cv-00711-JE, 2015 WL 630877, at

*3 (D. Or.  Feb. 10, 2015) ("The claim-presentation requirement [under the FTCA] is

15

'jurisdictional in nature and may not be waived.'") (quoting *Vacek v. U. S. Postal Serv.*, 447 F.3d 1248, 1253 (9th Cir. 2006), *cert. denied,* 550 U.S. 906 (2007)).

As previously noted, an action may not be filed under the FTCA "unless the claimant shall have first presented the claim to the appropriate Federal agency."  28 U.S.C. § 2675(a).  "A claim is properly presented within the meaning of § 2675(a) when the agency is given sufficient written notice to commence investigation and the claimant places a value on the claim."  *Bryan v. Stevens*, 169 F. Supp. 2d 676, 684 (S.D. Tex. 2001) (quoting *Transco Leasing Corp. v. United States*, 896 F.2d 1435, 1442 (5th Cir. 1990), *amended in part on other grounds*, 905 F.2d 61 (5th Cir. 1990)).  Postal Service regulations require an executed SF 95 or some "other written notification of an incident, accompanied by a claim for money damages in a sum certain."  39 C.F.R. § 912.5.

Plaintiff has not come forward with admissible evidence to prove that he or agents acting on his behalf submitted an executed SF 95 to the Postal Service on or before May 24, 2014.  As the court explained in *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1240 (11th Cir. 2002), a plaintiff must demonstrate three facts to create a presumption that his or her completed claim was received by the appropriate federal agency:  (1) that the document was properly addressed; (2) that the document was stamped; and (3) that the document was mailed.[9]  Nothing in the available record establishes any of these elements.  *Cf. Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1340 (10th Cir. 1998) (in finding that plaintiff's claim had been properly dismissed for failure to exhaust administrative remedies, the court noted that "[w]hile the law presumes receipt

---

[9]In addition to the missing green card, Mr. Shafner's firm apparently could not find a white certified mail receipt or any evidence that postage had been paid or billed to Mr. Lauren's case.

16

of a properly addressed piece of mail, there is no testimony on the record permitting any

inference that the [plaintiff's letter] was actually mailed"); *Spencer v. U.S. Postal Serv.,* No.

3:07cv150-RS-EMT, 2007 WL 2566031, at *4 (N.D. Fla. Aug. 31, 2007) (a presumption of

receipt may apply only if the document of concern was properly addressed, stamped, and mailed;

in finding that the plaintiff had failed to satisfy the presentment requirement, the court noted that

counsel's affidavit was not sufficient to trigger a presumption of receipt).   The only SF 95 sent

by Mr. Shafner's firm for which these three essential elements can be established through

admissible evidence is the November 12, 2014 email to Ms. Ross.   That presentment occurred

after Plaintiff commenced the instant litigation.

      Mr. vonHedemann testified that he obtained the original or a copy of  Mr. Shafner's letter

of July 9, 2012.   The issue then becomes whether that letter (the only undisputed communication

between Mr. Shafner's firm and the Postal Service prior to May 24, 2014) constitutes a "written

notification" sufficient to satisfy 39 C.F.R. § 912.5.   Once again, this question must be answered

in the negative.   Mr. Shafner's letter certainly references the accident on May 24, 2012, and

threatens litigation if a Postal Service representative does not contact Mr. Shafner immediately.

The letter, however, was sent to Mr. Lewis's personal address; it was not sent to the federal

agency itself.   Admittedly, Mr. vonHedemann was not solely dependent upon the limited

information contained in Mr. Shafner's letter, since he also had access to the accident reports

prepared by Mr. Lewis.   *Cf. Canning v. United States*, No. 11-774, 2012 WL 5287916, at *3

(E.D. Pa. Oct. 25, 2012) (suggesting that the notice requirement should be applied with some

flexibility; "courts place an 'emphasis [ ] on the agency's receipt of information: it must have

enough information that it may reasonably begin an investigation of the claim") (quoting

17

*Santiago-Ramirez v. Sec'y of Dep't of Def.*, 984 F.2d 16, 19 (1st Cir. 1993)).

Mr. Shafner's letter, however, will not suffice to satisfy the notice requirement, for that communication did not specify the amount of damages sought by Mr. Lauren.  That omission is fatal under 39 C.F.R. § 912.5 (stating that the written notification must be "accompanied by a claim for money damages in a sum certain") and prevailing case law.  *Cf. Low v. Donahoe*, No. 2:14-CV-0226-TOR, 2015 WL 1471110, at *3 (E.D. Wash. Mar. 31, 2015) (holding that presentment requires more than "mere notice of an accident and an injury; "[a] claim is not validly presented if it does not contain a demand for payment of a sum certain"); *Patock v. Fox News Television Channel*, No. 1:11-cv-974, 2012 WL 695892, at *3 (E.D. Va. Mar. 1, 2012) (although plaintiff submitted a letter to the appropriated federal agency, that letter did not include a request for a specific amount of damages, but instead requested compensation in an amount to be "determined later;" held that plaintiff failed to comply with "the FTCA's unwavering requirement of submission of a sum certain within two years of the incident").  *See also L.I. Head Start Child Dev. Serv., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc.*, 558 F. Supp. 2d 378, 392 (E.D.N.Y. 2008) ("statutes of limitations 'are not to be disregarded by courts out of a vague sympathy for particular litigants'") (quoting *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).

Moreover, Mr. Lauren cannot persuasively characterize the SF 95 sent to Ms. Ross on November 12, 2014 as an "amendment" to Mr. Shafner's letter of July 9, 2012.

> [A]n FTCA claim is not validly presented unless it includes a demand for a sum certain.  While a claimant may later amend a validly presented claim under 28 U.S.C. § 2675, a claim is not validly presented in the first place unless it contains a demand for a sum certain.

*Low*, 2015 WL 1471110, at *3 (internal citations omitted).  More importantly, the completed SF

18

95 was received by the Postal Service after Mr. Lauren filed his Complaint in Adams County

District Court. *Cf. Baker v. United States*, No. 12-494(JBS/JS), 2013 WL 3745880, at *5 (D.N.J.

July 15, 2013) (holding that an administrative claim against a federal agency may be amended

and refiled only "prior to commencement of suit in district court"); *Berlin v. United States*, 9 F.

Supp. 2d 648, 652 (S.D.W.Va. 1997) (holding that "a claimant should [not] be allowed to amend

a defective administrative claim by prematurely filing an FTCA civil action which the plaintiff

knows is improperly instituted").

       In short, I must find that Mr. Lauren failed to sustain his burden of proof on the

jurisdictional requirement of administrative-exhaustion. *Cf. Wilkerson v. United States*, No.

3:13-1499, 2014 WL 1653249, at *7 (M.D. Pa. Apr. 24, 2014) ("The plaintiff has the burden of

demonstrating that the agency actually received the administrative claim."). The facts in this

case are even more problematic than those in *Arias v. United States*, No. 05-4275 (JLL), 2007

WL 608375 (D. N.J. Feb. 23, 2007). In that case, the plaintiffs were involved in a car accident

with a Postal Service vehicle. Plaintiffs' attorney sent a letter notifying the Postal Service of the

accident, and in response a Postal Service representative mailed back two SF 95 claim forms,

with instructions to complete the forms and highlighting the need to specify the amount of

damages claimed. Although Plaintiffs insisted that they submitted a executed claim form via

regular mail, the Postal Service claimed to have no record showing receipt of that form. The

court in *Arias* noted a long line of cases holding that "to satisfy their presentment obligation, a

plaintiff must demonstrate that the appropriate federal agency actually *received* the claim." *Id.* at

4 (emphasis in original). The court also held that Plaintiff's counsel's affidavit alone was not

sufficient to prove that the Postal Service received the allegedly mailed claim form. *Id.* at *5. *Cf.*

*Lundy v. United States*, No. V-06-69, 2007 WL 655756, at *4 (S.D. Tex. Feb. 27, 2007) (after

noting the absence of a signed green card acknowledging receipt, the court observed that no

presumption "of delivery exists for certified mail when the requested return receipt is not

received by the sender").

Given his failure to present his administrative claim within the requisite two-year

limitation period, Plaintiff cannot prevail in this action unless he can successfully invoke the

doctrines of equitable tolling or equitable estoppel.  Here, again, the factual record presents Mr.

Lauren with insurmountable shortcomings.

For purposes of the instant case, it is useful to highlight the differences between equitable

tolling and equitable estoppel.

> Equitable estoppel is applied if a defendant takes active steps to prevent a plaintiff
> from suing in time. . . . Equitable tolling of the limitations period is appropriate if
> a plaintiff is unable to obtain information surrounding the claim despite due
> diligence.

*Schloesser v. Kan. Dep't of Health & Env't*, No. 92-3079, 1993 WL 113725, at *1 n.1  (10th Cir.

Apr. 12, 1993).

To successfully claim the benefits of equitable tolling, Mr. Lauren bears the burden of

proving that he diligently pursued his claim under the FTCA, but that some extraordinary

circumstances stood in his way.  *See Barnes*, 776 F.3d at 1150.  *Cf. Bass v. Potter*, 522 F.3d

1098, 1106 (10th Cir. 2008) (holding that equitable tolling requires that "the circumstances be

such that the plaintiff could not reasonably have been expected to act within the deadline");

*Robinson v. United States*, No. 13-cv-02269-MSK-CBS, 2014 WL 2536828, at *7 (D. Colo.

2014) (the party seeking to justify equitable tolling "bears a strong burden to show specific

facts" to demonstrate that he was pursuing his rights diligently and that some extraordinary

circumstances stood in his way).

Here, it is undisputed that Plaintiff's counsel was well aware of the two-year statute of limitations and Mr. Lauren's obligation to submit an executed administrative claim as an essential prerequisite to commencing litigation.  Mr. vonHedemann's email on August 21, 2012 could not have been clearer.  The instructions on the SF 95 form provided by Mr. vonHedemann explicitly stated that a "claim for money damages in a sum certain" was required and that "[f]ailure to specify a sum certain will result in invalid presentation of your claim and may result in forfeiture of your rights."  *See* Trial Exhibit 19.  Nothing in the record suggests that Mr. vonHedemann attempted to delay or prevent Mr. Lauren from submitting a timely claim.[10]  *Cf. Barnes,* 776 F.3d at 1150 (suggesting that equitable tolling is unavailable "unless [government action or inaction] makes it impossible reasonably for the party to comply with the filing statute").  *See also Stewart v. Rock Tenn CP, LLC,* No. 3:13-CV-02147-AC, 2015 WL 1883910, at *10 (D. Or. Apr. 24, 2015) (while equitable tolling should be reserved for  "extreme cases," the court noted that it may be potentially applicable where the "'government's deliberate failure to provide [plaintiff] with accurate information' resulted in the plaintiff's 'ignorance of the event triggering the limitations period'") (quoting *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207-08 (9th Cir. 1995)).

Rather, the record shows that Plaintiff's legal representatives simply failed to act in a timely manner prior to May 24, 2014, even after it became apparent that the administrative-exhaustion requirement had not been satisfied.  Ms. Williams was aware on May 14, 2014 that

---

[10]Once again, it should be noted that Mr. vonHedemann and the Postal Service promptly and favorably acted on Mr. Williamson's claim for property damage arising from the same accident with Mr. Lewis.

21

the law firm did not have a return receipt confirming delivery of Mr. Lauren's SF 95.  *See* Trial

Exhibit 36.  The obvious solution was to hand-deliver the claim to Mr. vonHedemann that same

day.  Failure to take that action does not rise to the level of "extraordinary circumstances"

sufficient to support equitable tolling.  *Cf. Barnes,* 776 F.3d at 1150 ("a garden variety claim of

excusable neglect . . . does not warrant equitable tolling").  *See also Wilkerson*, 2014 WL

1653249, at *8 (while equitable tolling may be available in "certain limited instances, where

plaintiffs acting with due diligence have failed to comply with the FTCA's exhaustion

requirement," the remedy "do[es] not extend to 'garden-variety claims of excusable neglect'");

*Hall v. Yates*, No. CIV S-08-2910 FCD EFB P, 2009 WL 4730906, at *2 (E.D. Cal. Dec. 7,

2009) (noting counsel's misconduct will only constitute extraordinary circumstances if it is

"sufficiently egregious" and  attorney misconduct will only constitute an extraordinary

circumstance if it rises about the level of mere negligence).

       Invocation of the doctrine of equitable estoppel is equally unavailing in this case.  To

equitably estop the United States, Mr. Lauren must show that the United States was aware of the

May 24, 2012 accident and Mr. Lauren's intent to assert a claim against the Postal Service.

Those elements are supported by the factual record.  However, Plaintiff also has the burden to

prove that Mr. VonHedemann or other Postal Service representatives took active steps to prevent

Mr. Lauren from submitting a timely complaint, that Plaintiff and his authorized representatives

were ignorant of the true facts, and that Mr. Shafner and his colleagues relied on Mr.

vonHedemann's conduct to their client's detriment.  *Cf.  Reid v. United States*, No. CIV-12-

1416-M, 2014 WL 1342824, at *2 (W.D. Okla. Mar. 31, 2014).  While Plaintiff took great pains

(with some success) to challenge Mr. vonHedemann's strict adherence to Postal Service policies

relating to the handling of tort claims, that line of questioning cannot overcome the absence of any admissible evidence showing that Mr. Shafner's office submitted a timely administrative claim.  *Cf. Adams v. Henderson*, 197 F.R.D. 162, 167-68 (D. Md. 2000) (holding that the Postal Service's "sloppy mailing practices" would not support a claim of equitable estoppel where plaintiffs presented "no evidence to show that these practices were intentionally carried out to cause the plaintiffs to miss the filing deadline, even if negligent").

## CONCLUSION

Based on the foregoing facts and conclusions of law, the court finds that Plaintiff Lauren failed to submit a timely and proper administrative claim as required by the Federal Tort Claims Act and §§ 2675(a) and 2401(b).  The court further finds that Mr. Lauren has not sustained his burden to come forward with sufficient facts to successfully invoke the doctrines of equitable tolling or equitable estoppel.  Accordingly, the court will enter judgment against Mr. Lauren and in favor of Defendant United States pursuant to Rule 52(c), consistent with the findings of fact and conclusions of law contained herein.

Dated this 8th day of December, 2015.

BY THE COURT:


s/ Craig B. Shaffer
United States Magistrate Judge